*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2026 UT 10**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

DAVID BRUCE BUTTARS,
*Appellant.*

No. 20241081
Heard March 2, 2026
Filed May 7, 2026*

On Certification from the Court of Appeals

Third District Court, Salt Lake County
The Honorable Vernice S. Trease
No. 131901512

Attorneys:

Derek E. Brown, Att'y Gen., Michael Palumbo, Asst. Solic. Gen.,
Salt Lake City, for appellee

Sarah J. Carlquist, Salt Lake City, for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
JUSTICE HAGEN, ASSOCIATE CHIEF JUSTICE POHLMAN,
JUSTICE NIELSEN, JUDGE MORTENSEN, JUDGE HARRIS, and
JUDGE VALENCIA joined.

Having recused himself, CHIEF JUSTICE DURRANT did not
participate herein; DISTRICT COURT JUDGE JENNIFER VALENCIA sat.

---

* As of January 31, 2026, the Utah Supreme Court was expanded
from five to seven justices. UTAH CODE § 78A-3-101(1). However, at
the time of oral argument in this case, the two new justices had not
yet been appointed. Accordingly, COURT OF APPEALS JUDGES DAVID
N. MORTENSEN and RYAN M. HARRIS sat.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1   Petitioner David Buttars seeks interlocutory review of an order from the presiding judge of the Third Judicial District denying his request for an exception to a Third District Standing Order. The Order mandates virtual jury selection and permits exceptions only in extraordinary circumstances.

¶2   Buttars is a defendant in a criminal case, which has not yet gone to trial. In the district court, he moved for in-person jury selection, arguing that virtual jury selection violated his constitutional rights and that this violation constituted an extraordinary circumstance under the Standing Order. The State stipulated to in-person jury selection (but not to Buttars' constitutional arguments), and the district court granted his motion without deciding the constitutional question. But under the Standing Order, the presiding judge of the Third District had to approve the exception.

¶3   Like the district court, the presiding judge did not address the merits of Buttars' constitutional argument. Rather, she correctly confined her review to whether Buttars had demonstrated extraordinary circumstances justifying an exception to the Standing Order. And she denied his motion because he had not.

¶4   Buttars appeals the presiding judge's order, arguing that the Standing Order's mandate of virtual jury selection is unconstitutional. But that is an issue that neither the district court nor the presiding judge reached. Accordingly, we dismiss his petition for interlocutory review as improvidently granted. However, we do so without prejudice to either party re-petitioning this court if Buttars seeks and obtains a ruling on his constitutional challenge from the district court. Additionally, because the Standing Order creates a unique procedure for litigants and district court judges, and the path to appealing an issue related to the Order is not well trodden, we offer some guidance in our analysis below.

## BACKGROUND

¶5   The Third Judicial District implemented virtual jury selection during the COVID-19 pandemic. It has since retained a form of this practice via a Standing Order, which states that "absent extraordinary circumstances and prior approval from the presiding

judge, all jury selections in the Third District Court will be conducted virtually." As we understand the Third District's current process, the judge, the attorneys, and the litigants gather physically in the courtroom for jury selection, but potential jurors appear virtually on a screen in the courtroom. Not until jurors are actually selected for service are they asked to come to the courthouse in person.

¶6    Before trial,[1] Buttars moved the district court for an exception to the Standing Order. He argued that the Sixth and Fourteenth Amendments to the United States Constitution give defendants a right to require that prospective jurors be physically present, with the defendant, in the courtroom during voir dire.[2] The State, "while not conceding any of the issues in the motion," stipulated to in-person jury selection.

¶7    Based on the motion and stipulation, the district court granted Buttars' request for in-person jury selection. In granting the motion, the district court recited Buttars' constitutional arguments regarding the Standing Order but did not rule on them. The district court then referred the matter to the presiding judge in accordance with the Standing Order's requirement that "prior approval" be obtained "from the presiding judge."

¶8    The presiding judge also did not rule on Buttars' constitutional claims. She confined her review to whether Buttars had demonstrated "extraordinary circumstances" as contemplated by the Standing Order. The presiding judge explained that "extraordinary circumstances," though not expressly defined in the Order, is a term "generally understood to mean 'a highly unusual set of facts that are not commonly associated with a particular thing or event.'" (Quoting *Circumstance*, BLACK'S LAW DICTIONARY (11th ed. 2019) (providing a sub-definition for "extraordinary circumstances").) And she observed that neither Buttars' motion

---

[1] Buttars was previously tried and convicted, but the court of appeals reversed the conviction based on an evidentiary ruling and remanded the case for a new trial. *See State v. Buttars*, 2020 UT App 87, ¶¶ 27, 49, 468 P.3d 553.

[2] Voir dire "refers to the jury-selection phase of a trial." *Voir Dire*, BLACK'S LAW DICTIONARY (12th ed. 2024). It is the "preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury." *Id.*

nor the district court's order "explains why this particular case—which involves alleged theft and securities fraud—is highly unusual or surpasses the normal or expected conditions of similar cases." The presiding judge reasoned that "general arguments regarding the alleged 'unconstitutionality' of the Standing Order" were "not the kind of circumstance for which approval by the presiding judge is contemplated or appropriate under the Standing Order." She ultimately concluded that Buttars had failed to show extraordinary circumstances and denied his request for an exception to the Order.

¶9    Buttars petitioned for interlocutory review with the court of appeals. His petition presented a single issue: "[w]hether the Standing Order mandating virtual Jury Selection and Voir Dire abrogates [his] constitutional right to a fair and impartial jury comprised of a cross-section of the community guaranteed under the Sixth and Fourteenth Amendments of the U.S. Constitution."

¶10  The court of appeals granted Buttars' petition and certified the matter to this court.

## ANALYSIS

¶11 Buttars' petition raises only one question: whether the Standing Order violates his constitutional rights. And "on interlocutory appeal, we review only those specific issues presented in the petition." *Houghton v. Dep't of Health*, 2005 UT 63, ¶ 16, 125 P.3d 860 (cleaned up). Because the issue Buttars asks us to decide has not been adjudicated in the district court—and was not addressed in the order he has appealed—we conclude that we should dismiss the petition as improvidently granted.

¶12  Neither the district court nor the presiding judge ruled on the question we are asked to review. Because the parties stipulated to in-person jury selection, the district court granted Buttars' request without addressing the merits of his constitutional challenge to the Standing Order. And the presiding judge assessed only whether Buttars had shown that extraordinary circumstances existed in his case, correctly refraining from ruling on Buttars' constitutional arguments. *See State v. Richins*, 2025 UT 10, ¶ 41, 568 P.3d 1046 (explaining that the presiding judge's role under the Standing Order is to determine whether "extraordinary circumstances exist as a prerequisite to granting approval" for in-person jury selection). This leaves us without a ruling to review.

¶13 Buttars asserted in oral argument that this should not deter us from reviewing his constitutional argument. He relied upon *State v. Richins*, in which we held that we could review a presiding judge's order denying in-person jury selection. *See id.* ¶¶ 20–36. In that case, we rejected the argument that we could not review such an order because it was "purely administrative" and the parties were "not challenging the Standing Order itself or the authority granted to the presiding judge under it." *Id.* ¶ 20 (cleaned up). We determined that when a presiding judge exercises her administrative authority to enter an order in a case, that order becomes "appealable like any other order," *id.* ¶ 35, and we can exercise jurisdiction over it, *see id.* ¶¶ 33–34.

¶14 But the posture in *Richins* was different. There, as here, the presiding judge issued an order denying in-person jury selection because she found that extraordinary circumstances were not present. *See id.* ¶¶ 12, 37, 44. But in *Richins*, the parties appealed that order and extraordinary-circumstances determination, which provided us with a ruling to review. *See id.* ¶¶ 33–37, 44. Here, by contrast, Buttars does not challenge the presiding judge's extraordinary-circumstances determination; instead, he challenges the constitutionality of the Standing Order itself. And that issue was not adjudicated in the district court, rendering review by this court premature. *See State v. Centeno*, 2023 UT 22, ¶ 54, 537 P.3d 232 (explaining that generally, the district court must have had an opportunity to rule on a constitutional claim before that claim may be brought on appeal).

¶15 However, Buttars' constitutional argument would be ripe in the district court if he chooses to raise it there. Because the presiding judge denied Buttars' request for an exception to the Standing Order, Buttars is subject to an order that he asserts is unconstitutional. If he wishes to challenge this state of affairs, the proper route is to challenge the constitutionality of the Standing Order in the district court.[3] It is the district court hearing Buttars' case that has the authority to rule on this issue in the first instance. If the district court does so and either party wishes to challenge that

---

[3] We note that if Buttars does challenge the constitutionality of the Standing Order in the district court, he must notify the Administrative Office of the Courts pursuant to Utah Rule of Criminal Procedure 12(i)(2), which was not done the first time around.

ruling, our dismissal of this petition does not preclude them from petitioning for interlocutory review of that order.

## CONCLUSION

¶16 We dismiss the petition for interlocutory review as improvidently granted, without prejudice to either party re-petitioning for interlocutory review if Buttars seeks and obtains a ruling from the district court on the constitutionality of the Standing Order.

———————